IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MECQUON GOODWIN,

                Plaintiff,

v.

TAMMY MAASSEN, KENNETH ADLER,
SUSAN NYGREN, ENRIQUE LUY,
WILLIAM MCCREEDY, WILLIAM KELLEY,
BARBARA BEHRAND, and TIMOTHY CORRELL,

                Defendants.

OPINION & ORDER

16-cv-96-jdp

---

Pro se plaintiff Mecquon Goodwin, a prisoner incarcerated at the John C. Burke Correctional Center, is proceeding on Eighth Amendment claims against medical staff at four of his prior prisons. Goodwin contends that defendants denied him medical care despite his complaints about serious conditions with his left leg. Dkt. 1. Two motions are pending before this court: (1) defendants' motion for partial summary judgment; and (2) Goodwin's motion for the court's assistance in recruiting counsel. I will deny both.

**A. Defendants' motion for partial summary judgment**

Those defendants who worked at three of Goodwin's four previous prisons—the Racine Correctional Institution, the Kettle Moraine Correctional Institution, and the Oakhill Correctional Institution—move for partial summary judgment for Goodwin's failure to exhaust administrative remedies. Dkt. 25. Goodwin did not file grievances at those prisons. But he contends that a grievance filed at the first prison, the Jackson Correctional Institution, apprised prison officials of the problem at issue in this case: the denial of medical care for his leg.

The familiar summary judgment standards govern defendants' motion. Defendants must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999).

I will deny defendants' motion without prejudice. Defendants have not established that Goodwin was required to file a new grievance every time he moved to a new prison. But the record has not been fully developed, so it is premature to determine whether the medical conditions at issue in this case all relate to the general medical problem with Goodwin's leg that he raised at Jackson. Defendants may raise the issue of exhaustion later in the case once the record is developed on this question.

Under the Prison Litigation Reform Act, a prisoner must exhaust administrative remedies before suing in court. 42 U.S.C. § 1997e(a). The exhaustion of administrative remedies is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Failure to exhaust requires dismissal of the prisoner's case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). On the other hand, "[i]f administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The prisoner's failure to exhaust "is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The exhaustion issue here is complicated because Goodwin was transferred among multiple prisons during the relevant period. Goodwin filed a grievance at his first prison and

complained that he had a serious medical condition with his leg. Goodwin then moved to three other prisons. Was Goodwin required to file a new grievance each time he moved to a new prison to satisfy the exhaustion requirement under the PLRA? I conclude that the answer is no, at least not necessarily.

The PLRA leaves it to the individual states to establish their own administrative remedies and grievance procedures. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). In Wisconsin, the Wisconsin Administrative Code established a centralized system, the Inmate Complaint Review System (ICRS), through which all state prisoners submit their grievances. Wis. Admin. Code DOC §§ 310.04, 310.07. The Wisconsin Administrative Code also governs when the grievances should be submitted through the ICRS and how they are handled, Wis. Admin. Code DOC §§ 310.01-18, but it does not expressly require inmates to file a new grievance each time he moves to a new facility. Defendants do not cite any provision showing such a requirement.

Likewise, the case law does not impose such a requirement. Generally, inmates "need not file multiple, successive grievances raising the same issue" when "the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (citing *Parzyck v. Prison Health Servs. Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) (prisoner "not required to initiate another round of the administrative grievance process on the exact same issue each time" a deprivation occurred). The inmate must file separate grievances only if "the underlying facts or the complaints are different." *Id.*, 729 F.3d at 650 (citations omitted).

Transferring to a new prison does not excuse an inmate from exhausting the available remedies. *See, e.g., Flournoy v. Schomig*, 152 F. App'x 535, 538 (7th Cir. 2005) ("The transfer therefore had no effect on his ability to follow through with the emergency grievance. And

although Flournoy argues generally that waiting for an answer to the inter-facility grievance was futile, he had to give the system a chance." (citations omitted)); *Lee v. Yu*, No. 12 C 4555, 2014 WL 4819152, at *7 (N.D. Ill. Sept. 2, 2014) ("Many courts hold that the mere fact of a transfer does not affect a prisoner's obligation to exhaust his administrative remedies before filing suit." (collecting cases)).

But on the other hand, I have found no authority to suggest that an inmate must necessarily file a new grievance when he is transferred to a new prison. The general rule that an inmate need not file multiple grievances raising the same issue still applies. Of course, some inmate complaints will be solved by transfer to a new prison. If, for example, if the inmate's complaint is that Dr. X is disregarding the inmate's knee pain, transfer to a new prison with entirely different health care staff will typically end the problem. But if the complaint is that the DOC refused to authorize knee surgery, then transfer to a new prison would not end the problem, and a filing a new grievance would be pointless.

Defendants quote *King v. McCarty*, where the Seventh Circuit stated, "In the absence of state law provisions to the contrary, prisoners . . . must direct their grievances to the entity allegedly responsible for the conditions they wish to challenge." 781 F.3d 889, 894 (7th Cir. 2015). In *King*, an inmate had moved from a county jail to a state prison, each with its own grievance procedure. 781 F.3d at 894. The Seventh Circuit thus considered which of the two grievance procedures the inmate had to satisfy and held that the exhaustion analysis was governed by the procedure of the county jail because the jail was the entity responsible for the challenged condition. *Id.* Thus, "directing" a grievance at the "entity responsible" meant that the inmate must satisfy the grievance procedure of the entity responsible for the challenged condition. But that's not really the issue here, as defendants seem to recognize.

4

If a prison policy makes the exhaustion "practically impossible," then the court may not dismiss the inmate's claims for failure to exhaust. *Id.* at 895-96. Here, Goodwin argues that the administrative remedy was unavailable because he had already filed a grievance at his previous prison raising the issue. If he had filed new grievances at his new prisons, he says, those grievances would have been rejected. Goodwin's subjective belief is irrelevant. *Perez*, 182 F.3d at 536 ("[W]hat would be the point of asking judges to be seers? . . . No one can know whether administrative requests will be futile; the only way to find out is to try."). But it appears that Goodwin has a point. In Wisconsin, although each prison appoints its own complaint examiner, the examiner can access the ICRS, review the prisoner's prior grievances, and reject the grievance for raising the same issue previously addressed through the ICRS. *See* Wis. Admin. Code DOC § 310.11(5)(g).

Defendants do not deny that if Goodwin had filed new grievances, they would have been rejected because of his prior grievance. They argue instead "that Goodwin had to file at each institution because the issue he would have been raising at each institution was unique." Dkt. 31, at 4 n.1. But whether the situation was unique is, at this point, a disputed fact.

Defendants argue that Goodwin's grievance at Jackson "was clearly construed" as the prison's failure to provide physical therapy. Dkt. 31, at 1-2. According to defendants, Goodwin asked for physical therapy back at Jackson and he got exactly what he asked for—his grievance was "affirmed" and he received physical therapy. Thus, according to defendants, the Jackson grievance did not notify the prison officials at his new prisons of the new and different problems with his legs. But I am not persuaded.

What matters is not how the prison officials construed a prisoner's grievance, but whether the grievance actually provides notice of the inmate's complaint and gives the prison

5

a chance to address it. *Cf. Turley*, 729 F.3d at 650 (rejecting prison officials' narrow reading of inmate complaint). In his original Jackson grievance, Dkt. 29-1, Goodwin complains about on-going excruciating pain, and he states that he was supposed to get physical therapy. The grievance was affirmed, in the sense that the prison understood that he would be transferred to an institution where he could get physical therapy. Dkt. 27-3, at 2. Goodwin appealed and explained that he had significant on-going problems with his left leg after surgery. Dkt. 29-4. The prison officials considered Goodwin's appeal and denied it. Dkt. 27-3, at 5. Prison officials were aware that Goodwin's grievance was not merely a request for physical therapy, but a more general complaint about the lack of care for his left leg.

I will deny defendants' motion, but without prejudice. Based on the limited record before me, it is unclear whether the many medical issues that Goodwin raises in this case are actually related to the condition described in his Jackson grievance. Defendants may raise the exhaustion issue again in a motion for summary judgment on the merits, to be filed by the general dispositive motion deadline set out in the pretrial conference order. Dkt. 24.

## B. Goodwin's motion for assistance in recruiting counsel

Goodwin moves for the court's assistance in recruiting counsel. Dkt. 30. I will deny his motion because he has not shown that he has tried to recruit counsel on his own.

Litigants in civil cases do not have a constitutional right to counsel, and the court has the discretion to determine whether assistance in recruiting counsel is appropriate. *See* 28 U.S.C. § 1915(e)(1); *Pruitt v. Mote*, 503 F.3d 647, 654, 656 (7th Cir. 2007) (en banc). Before assisting in recruiting counsel, this court generally requires a pro se litigant to satisfy two requirements. First, the pro se litigant must show that he has made reasonable efforts to recruit counsel on his own. *See Jackson v. Cty. of McLean*, 953 F.2d 1070, 1072-73 (7th Cir.

1992) ("[T]he district judge must first determine if the indigent has made reasonable efforts to retain counsel and was unsuccessful or that the indigent was effectively precluded from making such efforts"). The court requires the pro se litigant to provide the names and addresses of at least three attorneys who declined to represent him.

Second, once the pro se litigant has shown that he made some reasonable attempt recruit counsel, the court "must examine whether the difficulty of the case—factually and legally—exceeds" his competence to litigate his claims. *Perez v. Fenoglio*, 792 F.3d 768, 784 (7th Cir. 2015) (internal citation and quotation marks omitted). Assessing the litigant's competence is a "practical" inquiry, *Santiago v. Walls,* 599 F.3d 749, 762 (7th Cir. 2010), and no fixed requirement exists, *Pruitt*, 503 F.3d at 655. But courts generally consider the litigant's "literacy, communication skills, educational level, and litigation experience" in light of the complexities of the case. *Id*.

Here, Goodwin has not satisfied the first requirement. He states that "[a]ttached to his motion is a copy sent out to attorneys and said attorneys['] responses." Dkt. 30, ¶ 8. But the attachment is his letter to an unidentified "judge" requesting for help in recruiting counsel. Dkt. 30-1. The letter does not identify the names or addresses of the attorneys he tried to recruit. Goodwin has not shown reasonable efforts to obtain counsel on his own, so I will deny his motion. Should Goodwin show that he has made reasonable efforts to find counsel on his own, he will also have to show that the difficulty of the case exceeds his ability to litigate it.

ORDER

IT IS ORDERED that:

1. Defendants Susan Nygren, Enrique Luy, W. McCreedy, William Kelley, Barbara Behrand, and Timothy Correll's motion for partial summary judgment, Dkt. 25, is DENIED without prejudice.

2. Plaintiff Mecquon Goodwin's motion for assistance in recruiting counsel, Dkt. 30, is DENIED without prejudice.

Entered January 27, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge